1  JONATHAN K. WALDROP (SBN 297903)
   jwaldrop@kasowitz.com
2  JOHN W. DOWNING (SBN 252850)
   jdowning@kasowitz.com
3  HEATHER S. KIM (SBN 277686)
   hkim@kasowitz.com
4  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
   333 Twin Dolphin Drive, Suite 200
5  Redwood Shores, CA  94065
   (650) 453-5170 Telephone
6  (650) 453-5171 Fax

7  Attorneys for Plaintiff GOOGLE INC.

8

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11

12 | GOOGLE INC., | Case No. _____ |
|---|---|
13 | Plaintiff, | |
14 | v. | **COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 9,195,507** |
15 | EOLAS TECHNOLOGIES INCORPORATED; and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
16 | | |
17 | Defendants. | **DEMAND FOR JURY TRIAL** |

18

19       Plaintiff Google Inc. ("Google") seeks a declaratory judgment of non-infringement of

20 United States Patent No. 9,195,507 ("the '507 patent") as follows:

21                       **I.    NATURE OF THE ACTION**

22       1.    Google brings this action seeking a declaratory judgment of non-infringement

23 that arises under the patent laws of the United States, Title 35 of the United States Code.

24 Google brings this action against The Regents of the University of California ("Regents"), the

25 owner by assignment of the '507 patent (Ex. A)[1] and against Eolas Technologies, Inc. ("ETI"),

26 ──────────────────────

27 [1] The face of the '507 patent lists ETI as the assignee (Ex. A), but the Regents is listed as the owner by assignment of the '507 patent in the '507 patent's prosecution history.  (*See* Ex. B.)
28 No assignment to ETI can be located on the U.S. Patent Office's Assignments Database.  The Complaint in *Eolas Technologies Incorporated v. Google Inc.*, Civil Action No. 6:15-cv-1039

1  which purports to have received certain rights to the '507 patent by transfer and, upon
2  information and belief, acts as the Regents' agent for purposes of commercializing and
3  enforcing the '507 patent, and other patents related thereto.  Google requests this relief because
4  ETI continues to allege that Google infringes patents issuing from applications that are
5  continuations of U.S. Patent Application No. 08/324,443 ("the '443 Application"), including the
6  '507 patent.

7  2. In 2009, ETI and the Regents (collectively, "Eolas") first accused Google of
8  infringing U.S. Patent No. 5,838,906 ("the '906 patent") issued on November 17, 1998, and
9  U.S. Patent No. 7,599,985 ("the '985 patent") (collectively, "the Eolas I Patents"), which issued
10 on October 6, 2009 as a result of a series of continuation applications that claimed priority to the
11 parent '443 Application.  *Eolas Techs. Inc. v. Adobe Sys. Inc.*, et al., C.A. No. 09-cv-446
12 ("Eolas I").  The Eolas I Patents generally claimed running applications on a distributed
13 hypermedia computer network, allowing users to interact with online video, music or audio
14 clips, Internet search features, and maps and embedded applications in a browser.  As set forth
15 more fully below, after a jury trial, every asserted claim of the Eolas I Patents was found to be
16 invalid.  The U.S. Court of Appeals for the Federal Circuit affirmed on July 22, 2013.

17 3. In a letter dated December 19, 2013 received by Google on December 23, 2013
18 (the "December 23, 2013 letter," Ex. C), Eolas accused Google of infringing U.S. Patent Nos.
19 8,082,293 ("the '293 patent") and 8,086,662 ("the '662 patent") (collectively, "the Eolas II
20 Patents") by making, using, selling, offering for sale, and/or importing into the United States:
21 "(i) web pages and content to be interactively-presented in browsers, including . . . content
22 accessible via www.google.com . . . (ii) software, including, without limitation, browser
23 software and software that allows content to be interactively-presented . . . including, without

---

(E.D. Tex.), alleges that ETI owns the '507 patent "by transfer."  In prior litigation involving the same family of patents, ETI conceded that the Regents had ownership rights in this patent family, which has been confirmed by this Court. (Ex. U at 2 (Ex. U is marked "UNDER SEAL" but the information contained within was entered into the public trial record during the Eolas I trial); Ex. M.)  These facts suggest that the Regents may retain an ownership interest in the '507 patent.  Google intends to seek discovery to resolve ambiguity about the ownership of the '507 patent.

- 2 -

limitation, Chrome for Windows and Chrome for the Mac and/or (iii) computer equipment . . . that stores, serves, and/or runs any of the foregoing" (the "Eolas II Accused Systems").

4. After receiving Eolas' December 23, 2013 letter, Google filed a Complaint for Declaratory Judgment of Non-Infringement of the Eolas II Patents in the Northern District of California on December 30, 2013 in *Google Inc. v. Eolas Technologies Incorporated and The Regents of the University of California*, Civil Action No. 3:13-cv-05997 (N.D. Cal.) ("Google's Eolas II DJ").

5. On November 24, 2015, ETI sued Google alleging infringement of the '507 patent in the Eastern District of Texas in *Eolas Technologies Incorporated v. Google Inc.*, Civil Action No. 6:15-cv-01039. The '507 patent and the Eolas II Patents are siblings to each other – that is, all three issued from continuation applications that claim priority to the single '443 Application identified above, and all claim essentially the same subject matter. The '507 patent and the Eolas II Patents are also siblings with the Eolas I Patents.

6. A justiciable controversy therefore exists between these parties concerning the scope of the '507 patent and Eolas' allegations of infringement sufficient to support the relief sought by Google.

## II.   THE PARTIES

7. Google is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043. Google's mission is to organize the world's information and make it universally accessible and useful.

8. On information and belief, ETI is a corporation organized and existing under the laws of the State of Texas. ETI's principal place of business is located at 313 East Charnwood Street, Tyler, Texas 75701.

9. On information and belief, the Regents is a California corporation. On information and belief, the Regents' principal place of business is located at 1111 Franklin Street, 8th Floor, Oakland, California 94607. The Regents is listed as the owner by assignment of the '443 Application that resulted in the '507 patent. (*See* Ex. B.)

### III.   JURISDICTION

10.   This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

11.   This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

12.   This Court has general and personal jurisdiction over the Regents, which is domiciled in the State of California, oversees the University of California system, and maintains substantial operations within the boundaries of the Northern District of California, including being headquartered in Oakland.   (*See* http://regents.universityofcalifornia.edu/contact/index.html.)  Moreover, the Regents has maintained continuous and systematic contacts with the State of California and taken specific actions in this state and in the Northern District of California relevant to this matter, including: (1) identifying its address of service as 1111 Franklin Street, 8th Floor, Oakland, California 94607-5201; (2) retaining California attorney Charles E. Krueger of Walnut Creek, California to file and prosecute the '443 Application and the various continuation applications that ultimately issued as the Eolas II Patents and their sibling patents, and in the supplemental examinations and reexaminations of those patents, and the '507 patent; (3) initiating or participating as plaintiff in patent litigation actions against a variety of California entities, including Adobe Systems, Inc., Apple Inc., eBay Inc., Google, Sun Microsystems Inc., Facebook, Inc., The Walt Disney Company, Yahoo! Inc., and YouTube, LLC, involving the Eolas II Patents and/or related patents; and (4) on information and belief, entering into settlement/licensing agreements with a variety of California entities that allow such entities to continue activities alleged by the Regents to infringe the Eolas II Patents and/or related patents.  On information and belief, the Regents' licensing and enforcement efforts directed towards California residents have generated substantial payments from entities headquartered in California.

13.   This Court has personal jurisdiction over Defendant ETI.  ETI was first incorporated in California in 1994, then merged into a Delaware corporation before becoming a Texas Corporation.  (*See* Ex. F.)  ETI maintained continuous and systematic contacts with the

1  State of California since its inception, including: (1) communications and business agreements
2  with the Regents, a resident of the State of California, in which ETI assisted the Regents to
3  commercialize this patent family owned by the Regents; (2) ETI acquired licenses to the Eolas
4  II Patents and related patents (including upon information and belief the '507 patent) from the
5  Regents for the purpose of asserting such patents in litigation; (3) initiating patent litigation
6  actions against a variety of California entities involving the Eolas II Patents and/or related
7  patents, including Adobe Systems Inc., Apple Inc., eBay Inc., Facebook, Google, Sun
8  Microsystems Inc., The Walt Disney Company, Yahoo! Inc., and YouTube, LLC; (4) entering
9  into settlement/licensing agreements with California entities including Adobe Systems Inc.,
10 Apple Inc., eBay Inc., and Sun Microsystems Inc., that allow such entities to continue activities
11 alleged by ETI to infringe the Eolas II Patents and/or related patents; (5) directing
12 communications to Google in California (and, upon information and belief, other California
13 entities) alleging infringement of the Eolas II Patents and/or related patents; (6) availing itself of
14 the Northern District of California by seeking judicial relief in a case against Microsoft, Civil
15 Action No. 99-mc-00212-CRB; (7) previously submitting to the jurisdiction of this Court and/or
16 purposefully availing itself of the jurisdiction of this Court by asserting counterclaims in
17 Google's Eolas II DJ, and *J. C. Penney v. Eolas Technologies Incorporated and the Regents of*
18 *the University of California,* Civil Action No. 3:13-cv-06003, both filed in the United States
19 District Court for the Northern District of California; and (8) at one time incorporating in the
20 State of California and identifying the address of its registered agent for service at 2710
21 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833-3502.  (*See* Ex. F.)

22         14.    On information and belief, ETI has continuing obligations to the Regents
23 sufficient to establish personal jurisdiction, including the marketing and sale of patents, joint
24 prosecution and defense of patent-related actions, indemnification of the Regents, regular
25 recordkeeping, bookkeeping, accounting, and reporting to the Regents for patent-related
26 activities, the payment of patent royalties to the Regents, and a duty of due diligence in all
27 patent-related activities.  (Ex. M.)  On information and belief, ETI has chosen to avail itself of
28 the benefits and protections of California's laws by consenting to California law in the choice of

law provision in its licensing agreement with the Regents.  In addition, on information and belief, ETI reasonably can anticipate being subject to litigation in California based on its creation and incorporation in California for five years, and its acts of entering into its original licensing agreement with the Regents while in California, and engaging in patent-related activities in California before relocating to Texas.  (*Id.*)

15. On information and belief, ETI's business relationship with the Regents, and its associated licensing and enforcement efforts directed towards California residents, have generated substantial revenues.  For example, the 2009 Second Amended License Agreement between ETI and the Regents reflects the ongoing licensing and royalty arrangement between the parties.  (*See* Ex. G.)[2]  Further, in the prior litigation commenced in 2009, the Regents joined that lawsuit as plaintiff in light of its ownership interest in the patents asserted in that 2009 litigation and expressly to "support its licenses." (*See* Ex. H.)  On information and belief, in the litigation commenced in 2013, the Regents had real and substantial legal interests in the Eolas II Patents, including its right to terminate or reduce ETI's rights under the license, to sublicense the Eolas II Patents to others in certain circumstances, to ETI's due diligence with respect to patent-related activities, to publish and use technical data from any research related to the patents, to the payment of royalties, to a portion of any judgment entered in favor of the patents, and to reports, accounting, and recordkeeping by ETI regarding its patent-related activities. (Ex. M.)

16. Venue is proper in this District under 28 U.S.C. §§ 1391(b & c) because a substantial part of the events giving rise to Google's claim occurred in this district, and because the Regents and ETI are subject to general and/or personal jurisdiction here.

17. A justiciable controversy exists between Google and Eolas as to whether Google is infringing or has infringed the '507 patent.

---

[2] Ex. G is marked "Highly Confidential – Attorney's Eyes Only," but was entered into the public trial record during the trial that resulted in the verdict of invalidity.

## IV. INTRADISTRICT ASSIGNMENT

18. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a district-wide basis.

## V. FACTUAL BACKGROUND

### A. The '443 Patent Application And Patents

19. The '443 Application was filed on October 17, 1994. This application was generally drawn to interactive distributed Internet applications. The patent application named Michael David Doyle, a former researcher at the University of California, as an inventor. He assigned all rights, title and interest in the '443 Application to the Regents.

20. Five patents relevant to this matter issued from the original '443 Application. The previously-asserted '906 patent issued on November 17, 1998. Its claims were drawn generally to a method of running applications on a distributed hypermedia computer network – that is, the patent claims a method of allowing users to interact with online video, music or audio clips, Internet search features, and maps and embedded applications in a browser. The previously-asserted '985 patent issued on October 6, 2009, as a result of a series of continuation applications that claimed priority to the parent '443 Application. Its claims were also drawn to methods of running applications on a distributed hypermedia computer network. As set forth more fully below, after a jury trial, every asserted claim of the Eolas I Patents were found to be invalid. The U.S. Court of Appeals for the Federal Circuit affirmed on July 22, 2013.

21. The Eolas II Patents, like their sibling Eolas I Patents, also issued on continuation applications claiming priority to the '443 Application. Also like their siblings, the claims of the Eolas II Patents are drawn to methods of running applications on a distributed hypermedia computer network. Further, during prosecution of the Eolas II Patents, the Patent Office rejected all pending claims in the applications for both the '293 and '662 patents under the doctrine of double patenting. The Examiner thus concluded that the pending claims of the Eolas II Patents were not patentably distinct from the claims of the Eolas I Patents. (*See* Exs. I & J.) Eolas did not traverse the Examiner's conclusions; rather, Eolas tacitly acknowledged that the

pending claims were not patentably distinct from the claims of the Eolas I Patents by instead filing a terminal disclaimer to overcome the rejections. (*See* Exs. K & L.)

22. The '507 patent, like its sibling Eolas I and Eolas II Patents, also issued on a continuation application claiming priority to the '443 Application and lists as inventors Michael Doyle, David C. Martin of San Jose, California, and Cheong S. Ang of Los Altos, California. Also like its siblings, the claims of the '507 patent are directed to running applications on a distributed hypermedia computer network.

**B.     ETI Was Established to Commercialize and Enforce the '443 Application**

23. Mr. Doyle founded ETI in 1994, contemporaneously with the filing of the '443 Application. He formed ETI first as a California company expressly to "assist the University of California in commercializing" the inventions disclosed in the '443 Application. (*See* Eolas website http://www.eolas.com/about_us.html.) ETI has represented the Regents' interests in numerous litigations asserting the patents that issued from the '443 Application.

24. On information and belief, in 1999, Eolas sued Microsoft Corporation in the Northern District of Illinois alleging infringement of the '906 patent. According to the Office of the President, the Regents joined that lawsuit because it was an important lawsuit and the "University expects to be fairly compensated for its patented technology." (*See* http://www.ucop.edu/news/archives/2003/aug11art1qanda.htm.) On further information and belief, Microsoft later settled the litigation by licensing the '906 patent from Eolas.

25. In October 2009, Eolas filed a patent infringement suit in the Eastern District of Texas against multiple companies, including Google and many others based in California, alleging infringement of the Eolas I Patents. Prior to the conclusion of trial, several defendants, including California-based companies Adobe Systems, Inc., Apple Inc., eBay Inc., and Sun Microsystems Inc., settled with Eolas and were dismissed from the suit. On information and belief, those defendants entered into settlement agreements in which each was granted licenses to the Eolas I Patents.

26. Google and other defendants declined to settle and proceeded to trial. The jury returned with a verdict finding every asserted claim of the Eolas I Patents to be invalid. The

1  trial court entered final judgment on the jury's verdict and, on July 22, 2013, the Federal Circuit
2  affirmed the judgment in its entirety.

3        27.    In September 2012, Eolas filed patent infringement lawsuits against several more
4  California-based companies, including Facebook, Inc. and The Walt Disney Company, this time
5  alleging infringement of the Eolas II Patents.

6        28.    On December 23, 2013, Google received Eolas' December 23, 2013 cease-and-
7  desist letter, accusing Google of infringing the Eolas II Patents, thereby giving rise to Google's
8  Eolas II DJ.

9  **C.**    **A Justiciable Controversy Exists Regarding Google's Alleged Infringement**

10        29.    As set forth above, Eolas accused Google of infringing the closely-related Eolas I
11  Patents in Eolas' 2009 lawsuit. Google was one of the defendants that successfully tried the
12  asserted claims of the Eolas I Patents to a verdict of invalidity.

13        30.    Eolas sent a December 23, 2013 letter to accuse Google of infringing the Eolas II
14  Patents. Eolas' accusations threatened Google's research and development activity of the Eolas
15  II Accused Systems, threatened Google's fundamental work to develop innovations to organize
16  Internet content to render it accessible and useful, and threatened Google's business and
17  relationships with its customers and partners. The December 23, 2013 letter was sent by Eolas'
18  litigation counsel to Google, copying Google's prior litigation counsel.

19        31.    After receiving Eolas' December 23, 2013 letter, Google filed its Eolas II DJ on
20  December 30, 2013.

21        32.    Eolas moved to dismiss Google's Eolas II DJ for lack of personal jurisdiction
22  over ETI pursuant to Fed. R. Civ. P. 12(b)(2) and subject matter jurisdiction over the Regents
23  pursuant to Fed. R. Civ. P. 12(b)(1). (Ex. D.) In this motion, Eolas also requested that the
24  Court transfer the case to the Eastern District of Texas, where cases addressing the same patents
25  were pending.

26        33.    The Court denied Eolas' motion to dismiss on June 24, 2014. (Ex. M.) The
27  Court determined that ETI had continuing obligations to the Regents sufficient to establish
28  personal jurisdiction, including the marketing and sale of the patents, joint prosecution and

defense of patent-related actions, indemnification of the Regents, regular recordkeeping, bookkeeping, accounting, and reporting to the Regents for patent-related activities, the payment of patent royalties to the Regents, and a duty of due diligence in all patent-related activities. Further, the Court found that ETI's consent to California law in the choice of law provision in the licensing agreement between ETI and the Regents demonstrated that ETI had chosen to avail itself of the benefits and protections of California's laws.  In addition, the Court found that ETI's creation and incorporation in California for five years, and its acts of entering into its original licensing agreement with the Regents while in California, and engaging in patent-related activities in California before relocating to Texas, demonstrated that ETI reasonably could have anticipated being subject to litigation in California, and were sufficient contacts to establish personal jurisdiction.  With respect to subject matter jurisdiction, the Court found that the dispute touched on the Regents' real and substantial legal interests in the Eolas II Patents, including its right to terminate or reduce ETI's rights under the license, to sublicense the Eolas II Patents to others in certain circumstances, to ETI's due diligence with respect to patent-related activities, to publish and use technical data from any research related to the patents, to the payment of royalties, to a portion of any judgment entered in favor of the patents, and to reports, accounting, and recordkeeping by ETI regarding its patent-related activities.

34.     After the Court denied Eolas' motion to dismiss, Eolas filed an answer to Google's Eolas II DJ on July 8, 2014, asserting counterclaims alleging that Google infringed the Eolas II Patents.  (Ex. N.)  ETI subsequently filed a motion to voluntarily dismiss those counterclaims under Fed. R. Civ. P. 41(a)(2).  (Ex. O.)  ETI then filed a corrected answer and counterclaims clarifying that the infringement counterclaims were ETI's alone. (Ex. P.)  Shortly thereafter, the Regents joined ETI's motion to dismiss.  (Ex. Q.)

35.     In this motion, Eolas sought the following:  (1) dismissal with prejudice of ETI's counterclaims of infringement of the Eolas II Patents; (2) dismissal without prejudice of Google's declaratory judgment claims of non-infringement of the Eolas II Patents; and (3) dismissal without prejudice of "any claims Eolas may have against Google for any patent claim in any other patent or patent application, including continuation application No. 13/292,434,

1  filed November 9, 2011." (Ex. O, 2:9-11.) Continuation application 13/292,434 is the
2  application that resulted in the '507 patent, demonstrating that Eolas anticipated asserting this
3  patent against Google during the pendency of the Declaratory Judgment Action in the Northern
4  District of California.

5  36. Google opposed Eolas' motion on two grounds: (1) Eolas' motion did not
6  dispose of the controversy between the parties because it failed to dismiss claims against
7  Google's customers; and (2) Eolas' motion sought to dismiss prospective claims that were not
8  part of the action or did not yet exist as improper under Rule 41(a), which authorizes only the
9  dismissal of claims actually asserted. (Ex. R.) With respect to Eolas' request for a dismissal
10 without prejudice of its claims as to other patents and patent applications, Eolas stated that
11 "Eolas and the Regents want to make undeniably clear that the dismissal of their existing and
12 potential claims against infringers of the *patents-in*-suit does not prejudice their current and
13 future claims against infringers of *other* patents, including those that may issue in the future."
14 (Ex. S, 4:14-16 (emphasis in original).)

15 37. On December 4, 2014, by stipulation of the parties, this Court "dismissed with
16 prejudice any and all claims of infringement, including direct and indirect infringement, of the
17 patents-in-suit that Eolas or the Regents has or may have in the future, including any claims of
18 past, present or future infringement of the patents-in-suit against: (a) Google; (b) any Google
19 affiliates; and/or (c) any users, customers, or Google partners with respect to Google products
20 and/or services (including but not limited to services, components, hardware, software,
21 websites, processes, machines, manufactures, and any combinations and components thereof,
22 that are designed, developed, sold, licensed, or made, in whole or substantial part, by or on
23 behalf of Google)[.]" (*See* Ex. T.)

24 38. On November 24, 2015 (the same day that the '507 patent issued), in an action
25 stemming from the long history of litigation involving the Eolas I and Eolas II Patents, ETI sued
26 Google in the Eastern District of Texas alleging that Google's interactively-presented web pages
27 and content, including search results and suggestions, and related devices and equipment,
28 infringed the '507 patent, in: *Eolas Technologies Incorporated v. Google Inc.*, Civil Action No.

6:15-cv-01039. In its Complaint, ETI does not name the Regents as a party or reference the Regents as having any rights to the '507 patent.[3] Nor does ETI allege that it owns full right and title to the '507 patent. Instead, its Complaint contains a bare allegation that the '507 patent "is owned by transfer" by ETI. ETI did not attach an assignment to its Complaint to support this allegation, and no assignment to ETI can be located on the U.S. Patent Office's Assignments Database. Rather, the prosecution history for the '507 patent contains a Statement Under 37 C.F.R. 3.73(b) dated November 9, 2011, showing the Regents as "the assignee of the entire, right, title and interest in" Application No. 13/292,434. (Ex. B.) On information and belief, the only reference to ETI having rights to the application that can be located in the prosecution history is a listing of ETI as an "assignee" to be printed on the face of the patent in a "Part B – Fee(s) Transmittal" form dated October 19, 2015. (Ex. E.)

39. For all these reasons, a justiciable controversy exists between Google and Eolas regarding the alleged infringement of any claim of the '507 patent.

D. **Google Does Not Infringe the '507 Patent**

40. On information and belief, Google's interactively-presented web pages and content, including search results and suggestions, and related devices and equipment, do not infringe any asserted claim of the '507 patent.

**FIRST COUNT**

**(Declaration of Non-Infringement of the '507 Patent)**

41. Google restates and incorporates by reference the allegations in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. On information and belief, the Regents own the '507 patent by assignment. On information and belief, ETI has received certain rights to the '507 patent and ETI serves as the Regents' agent for purposes of commercializing and enforcing the '507 patent. Accordingly, on

---

[3] In prior litigation involving the same family of patents, ETI conceded that the Regents had ownership rights to this patent family, which has been confirmed by this Court. (Ex. U at 2; Ex. M.) These facts suggest that the Regents may retain an ownership interest in the '507 patent. If Eolas has retained important rights in the '507 patent, the Court in the Texas action may not be able to fully resolve the dispute.

information and belief, Eolas collectively owns all rights, title, and interest in the '507 patent.

43. On November 24, 2015, in an action stemming from the long history of litigation involving the Eolas I and Eolas II Patents, ETI sued Google alleging infringement of the '507 patent in the Eastern District of Texas in *Eolas Technologies Incorporated v. Google Inc.*, Civil Action No. 6:15-cv-01039.

44. A justiciable controversy therefore exists between Google and Eolas regarding whether Google's products and services infringe the '507 patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '507 patent. Google seeks a judgment declaring that Google's interactively-presented web pages and content do not directly infringe any claim of the '507 patent.

**PRAYER FOR RELIEF**

WHEREFORE, Google prays for judgment and relief as follows:

A. Declaring that Google's interactively-presented web pages and content, including search results and suggestions, and related devices and equipment, do not infringe the '507 patent;

B. Declaring that judgment be entered in favor of Google and against Eolas on Google's claim;

C. Finding that this is an exceptional case under 35 U.S.C. § 285;

D. Awarding Google its costs and attorneys' fees in connection with this action; and

E. Such further and additional relief as the Court deems just and proper.

**JURY DEMAND**

Google demands a jury trial on all issues and claims so triable.

| | |
|---|---|
| Dated:  November 25, 2015 | By: */s/  Jonathan K. Waldrop*<br>Jonathan K. Waldrop |

                                             Jonathan K. Waldrop
                                             SBN 297903
                                             jwaldrop@kasowitz.com
                                             John W. Downing
                                             SBN 252850
                                             jdowning@kasowitz.com
                                             Heather S. Kim
                                             SBN 277686
                                             hkim@kasowitz.com
                                             KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
                                             333 Twin Dolphin Drive, Suite 200
                                             Redwood Shores, California 94065
                                             Tel:  (650) 453-5170; Fax: (650) 453-5171

                                             Attorneys for Plaintiff Google Inc.