1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    GOOGLE INC.,                             Case No.  15-cv-05446-JST
                   Plaintiff,
8
           v.                                 **ORDER GRANTING MOTION TO**
9                                             **DISMISS AS MODIFIED**
     EOLAS TECHNOLOGIES
10   INCORPORATED, et al.,                    Re: ECF No. 37

11                 Defendants.

12          Before the Court is Defendant Eolas Technologies, Inc.'s Motion to Dismiss.  The Court

13   will stay the case in light of a previously filed case in another district, and therefore grants the

14   motion as modified.

15   **I.      BACKGROUND**

16          **A.  Factual Background**

17                **1.   The Parties and the Patent-in-Issue**

18          Plaintiff Google Inc. ("Google") sues Defendant Eolas Technologies Incorporated

19   ("Eolas") for a declaratory judgment of non-infringement of U.S. Patent No. 9,195,507 ("the '507

20   patent"), which Eolas owns.  ECF No. 27 ¶ 1.  The '507 patent involves methods of running

21   applications on a distributed hypermedia computer network.  Id. ¶ 22.  As Google explains it,

22   these are methods that allow users to interact with online video, music or audio clips, Internet

23   search features, and maps and embedded applications in a browser.  Id. ¶ 20.

24          Google is incorporated in Delaware, with its principal place of business in California.  Id. ¶

25   7.  Eolas was incorporated in California between 1994 and 1999, but it has been incorporated and

26   had its principal place of business in Texas since 2009.  ECF No. 37-5 ¶¶ 3-4.  Google alleges that

27   Eolas was founded in California in 1994 to help commercialize an invention conceived at the

28   University of California, San Francisco.  ECF 53-3 at 8-9.  The Regents of the University of

California ("the Regents") was the initial owner of the patent application for the invention.  ECF No. 27 ¶ 11.  The Regents is a resident of California.  Id.  In 1995, Eolas and the Regents entered into an exclusive patent license agreement ("Exclusive License Agreement," as amended in 2009), whereby the Regents granted an exclusive license to Eolas to the patent application and "any reissues, extensions, substitutions, continuations, divisions and continuations-in-part" based on and including any subject matter claim in or covered by that application.  ECF No. 53-13 at 8, 10.

The Exclusive License Agreement imposed many continuing obligations on Eolas, including marketing and sale of patents, joint prosecution and defense of patent-related actions, indemnification of the Regents, regular recordkeeping, bookkeeping, accounting, and reporting to the Regents for patent-related activities, the payment of patent royalties to the Regents, and a duty of due diligence in all patent-related activities.  Id. at 10, 13–17, 20–21, 23–26.  On October 9, 2015, Eolas and the Regents entered into a patent assignment agreement ("the Assignment"), under which the Regents assigned to Eolas certain patents and patent applications, and "all divisions, continuations, continuations-in-part, extensions, reissues and renewals" of such patents and patent applications, and "all United States and foreign patents which may be granted" on the patent applications.  ECF No. 37-5 at 19.  The Assignment explicitly terminated the Exclusive License Agreement.  Id. at 14.

The patents and patent applications specifically mentioned in the Assignment are Patents Nos. 5,838,906 ("the '906 patent"), 7,599,985 ("the '985 patent"), 8,086,662 ("the '662 patent"), and 8,082,293 ("the '293 patent"), as well as U.S. Patent Application No. 13/292,434, from which the '507 patent eventually issued on November 24, 2015.  Id. at 21-22.  Google alleges that the '906, the '985, the '293, the '662, and the '507 patents are all directed to running applications on a distributed hypermedia computer.  ECF No. 27 ¶¶ 19-22.  According to Google, these patents are all related because they all issued as continuations of a single patent application, United States Patent Application No. 08/324,443 ("the '443 application").  Id.

Under the Assignment, the "purchase price" of the patent rights is listed as five percent of net revenues received pursuant to each license agreement that Eolas secures with third parties, which Eolas shall pay to the Regents on a calendar quarter basis.  ECF No. 37-5 at 7.  Like the

United States District Court
Northern District of California

2

Exclusive License Agreement, the Assignment imposed continuing obligations upon Eolas and the Regents.  These obligations include: (1) keeping accurate books and records accounting for all the amounts due from Eolas to the Regents, and maintaining "sufficient supporting documentation to substantiate the accuracy" of the payments due to the Regents; (2) making these books and records available for inspection by the Regents in order for the Regents to assess and determine Eolas' compliance with the terms of the Assignment; (3) requirements for the Regents to cooperate with Eolas in the enforcement, litigation, and licensing of the patents assigned; (4) Eolas' obligation to provide counsel to the Regents should the Regents be named as a defendant in non-infringement declaratory suits; (5) Eolas' obligation to notify the Regents of any licenses granted by Eolas to third parties (Article 3.7); (6) Eolas' obligation to exercise due diligence and reasonable efforts to enter into license agreements; and (7) requirements that Eolas indemnify and hold harmless the Regents.  Id. at 6-7, 8, 11, 12.  The Assignment also explicitly selects California law as the governing law.  Id. at 13-14.

In February 2016, after Google had commenced this action, Eolas and the Regents executed the First Amendment to Patent Assignment Agreement ("the Amendment"), which materially modified the Assignment.  ECF No. 37-6.  First, the Amendment removed Eolas' obligation to exercise due diligence and reasonable efforts to enter into license agreements with third parties.  Id. at 2.  Second, it removed the requirement that Eolas provide reports of the payments due the Regents.  Id.  Third, the Amendment removed the provision that selected California law as the governing law.  Id.  Lastly, it modified the Regents' obligation to cooperate with Eolas' efforts to enforce, litigate, and license the patents assigned.  Id.  Article 4 ("the Cooperation; Expenses article") read:

> 4.1 In aid of the assignment . . . The Regents will provide assistance to Eolas from time-to-time [sic], as requested at Eolas' expense for out of pocket costs, unless otherwise specified elsewhere in this Agreement, in:
>
> 4.1.1 Locating and providing copies of documents which relate to the Patent Rights that are reasonably requested by Eolas in connection with efforts to enforce the Patent Rights; . . .

> 4.1.4 Cooperating in any litigation or licensing relating to the Patents by causing its employees and, to the extent reasonably feasible, former employees to execute and deliver documents and provide support and testimony relating to the Patents with representation for such employees and former employees to be provided by Eolas.

ECF No. 37-5 at 6-7.

Under the Amendment, Article 4 now reads:

> 4.1 In the event that The Regents provide assistance to Eolas in:

> 4.1.1 locating and providing copies of documents which relate to the Patent Rights in connection with efforts to enforce the Patent Rights;

> 4.1.2 executing and delivering any additional documents which are reasonably required in order to effectuate and perfect the assignment accomplished by this Agreement; and

> 4.1.3 any litigation or licensing relating to the Patents;

> then Eolas shall pay to The Regents expenses for out-of-pocket expenses incurred.

ECF No. 37-6 at 2.

### 2.  Previous Patent-Related Lawsuits Involving Google and Eolas

This action is one in a string of similar suits between Eolas and Google.  In 2009, Eolas filed an action against Google and other companies in the Eastern District of Texas, alleging infringement of the '906 and the '985 patents.  ECF No. 27 ¶ 25.  Eolas added the Regents as plaintiff in the action.  Id.  Google and others proceeded to trial, and the jury returned a verdict finding the patents invalid and unenforceable.  ECF No. 27 ¶ 26.  The Federal Circuit affirmed the judgment in July 2013.  Id.

In December 2013, after receiving cease-and-desist letters from Eolas regarding the '293 and the '662 patents, Google filed a complaint against Eolas and the Regents in this Court, asking for a declaratory judgment of noninfringement.  ECF No. 37-4.  At the time, the Regents owned the '293 and the '662 patents, and Eolas was the exclusive licensee of the patents.  ECF No. 37 at 6.  In that case, this Court determined that it had personal jurisdiction over Eolas.  Google, Inc. v. Eolas Techs. Inc., No. 13-CV-05997-JST, 2014 WL 2916621, at *4 (N.D. Cal. June 24, 2014).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The case was ultimately dismissed with prejudice, by stipulation of the parties.  ECF No. 27-20.

2        **B.  Procedural History**

3          On November 24, 2015, Eolas filed an infringement action against Google in the Eastern

4    District of Texas ("the Texas Action"), claiming that Google has infringed the '507 patent.  ECF

5    No. 37-3.  The next day, Google filed this action against Eolas and the Regents.  ECF No. 1.  The

6    Texas Action is ongoing.  ECF No. 37 at 5.  On January 20, 2016, after Google had become aware

7    that the Regents had assigned the application that issued as the '507 patent to Eolas, Google

8    amended its complaint to remove the Regents as a defendant.  ECF No. 27 ¶ 8 n.1.

9          Eolas has moved to dismiss Google's complaint on two theories.  First, Eolas contends that

10   this Court lacks personal jurisdiction over Eolas under Rule 12(b)(2) of the Federal Rules of Civil

11   Procedure.  ECF No. 37 at 5.  Second, Eolas argues that the Court should decline to exercise

12   jurisdiction under the first-to-file rule because Eolas filed the Texas Action before Google filed

13   this declaratory judgment action.  Id.  Alternatively, Eolas contends that the Court should stay this

14   action or transfer it to the Eastern District of Texas.  Id. n.1.  Google has also filed a motion with

15   the Eastern District of Texas to transfer the Texas Action to this District.  ECF No. 53-44.

16   Google's motion is awaiting a ruling from the Texas court.

17   **II.    LEGAL STANDARD**

18         Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to

19   Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing this Court's

20   jurisdiction.  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).  In patent cases, the

21   Court applies the law of the Federal Circuit to the issue of jurisdiction "because the jurisdictional

22   issue is intimately involved with the substance of the patent laws."  Avocent Huntsville Corp. v.

23   Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (internal quotation omitted).  Because the

24   parties have not conducted discovery, Google must only make a prima facie showing that Eolas is

25   subject to this Court's jurisdiction.  Id.  At this stage, "the pleadings and affidavits are to be

26   construed in the light most favorable to [Google]."  Avocent, 552 F.3d at 1328–29 (citations

27   omitted).

28

III.     **PERSONAL JURISDICTION**

A.     **Jurisdictional Standard**

The determination of personal jurisdiction over a non-resident defendant entails two inquiries: (1) whether the forum's long-arm statute permits service of process on the defendant; and (2) whether jurisdiction complies with due process.  Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (9th Cir. 2003) (citations omitted).  Because California's long-arm statute is co-extensive with due process, see California Code of Civil Procedure § 410.10, the Court analyzes whether Google has alleged sufficient contacts to satisfy due process.  Coyle, 340 F.3d at 1350.  "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted).

Personal jurisdiction can be either general or specific.  Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014).  To establish general jurisdiction, a plaintiff must prove that the defendant's contacts with the forum are so continuous and systematic that the defendant is virtually "at home" in the forum.  Id. at 751 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846 (2011)).  This showing is generally only satisfied by the defendant having been incorporated in the forum state, or maintaining its principal place of business there.  Daimler, 134 S.Ct. at 760–61.

Google does not contend that general jurisdiction over Eolas is appropriate here.  Rather, it contends that the exercise of specific jurisdiction is proper given Eolas' connection with California.  ECF No. 53-3 at 17.  "Accordingly, we focus our analysis on specific jurisdiction, under which [Google] must make a prima facie showing that [Eolas] purposefully directed its activities at residents of the forum, and that [Google's] declaratory judgment action arises out of or relates to those activities."  See Avocent, 552 F.3d at 1338 (internal quotations omitted).

To determine specific jurisdiction, the Court applies a three-prong test, which looks to "whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) asserting personal jurisdiction is reasonable and fair."  Coyle, 340 F.3d at 1350 (citations omitted).  "While

United States District Court
Northern District of California

the plaintiff bears the burden to establish minimal contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable." Id. at 1344. Therefore, Google, as the declaratory judgment plaintiff, must demonstrate that the first two prongs have been satisfied— i.e., it must establish "minimum contacts" with the forum. If it does so, the burden shifts to Eolas, who must disprove the reasonableness and fairness of the Court's assertion of jurisdiction.

With regard to the second prong of the specific jurisdiction test, the Federal Circuit has held that not all activities related to the patents-in-suit are relevant jurisdictional contacts. Avocent, 552 F.3d at 1332–33. For example, due to "policy considerations unique to the patent context," courts cannot assert jurisdiction on the sole basis of cease-and-desist letters sent into the forum state. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998). Instead, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1202 (Fed. Cir. 2003) (emphasis added). "Examples of these 'other activities' include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." Avocent, 552 F.3d at 1334.

Accordingly, the Federal Circuit has held that

> an action for a declaratory judgment arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit, and . . . the relevant inquiry for specific jurisdiction is to what extent . . . the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities. *Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action.*

Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785, 788-89 (Fed. Cir. 2011) (emphasis added) (internal quotation marks and citations omitted). Therefore, the Court must "examine the jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail itself of

1    the forum and to engage in activity that relates to the validity and enforceability of the patent.'"

2    Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1020 (Fed. Cir. 2009).

3        **B.    2014 Order**

4        This case is unlike most cases involving jurisdictional analysis because, as noted above,

5    this Court has previously adjudicated a jurisdictional dispute between the parties.  In its 2014

6    order, the Court reasoned that Eolas maintained minimum contacts with California in the form of

7    its "continuing obligations to the Regents under the licensing agreement," which included the

8    "marketing and sale of the patent," "joint prosecution and defense of patent-related actions," and

9    other obligations including indemnification, payment of royalties, and accounting and

10   bookkeeping.  Google, Inc. v. Eolas Techs. Inc., No. 13-CV-05997-JST, 2014 WL 2916621, at *3

11   (N.D. Cal. June 24, 2014).  The Court also found that those contacts made the exercise of specific

12   jurisdiction over Eolas reasonable and fair.  Id. at *4.

13       At this point, a clarification is in order.  Google asserts that this Court previously found it

14   had jurisdiction over Eolas in part due to non-enforcement-related obligations and connections,

15   such as the fact that Eolas sent cease-and-desist letters, was created and incorporates in California

16   and that it consented to a California choice of law provision. ECF No. 53-3 at 17-19.  While it is

17   true that the Court previously referenced these factors in exercising jurisdiction over Eolas in

18   2014, its order made clear that the crux of its jurisdictional analysis was the existence of an

19   exclusive licensing agreement or evidence of some other continuing obligation.  See, e.g., Google,

20   2014 WL 2916621, at *3 (identifying other factors that "when coupled with an exclusive licensing

21   agreement," had been held sufficient to confer jurisdiction).  Here, too, the Court must focus on

22   whether Eolas continues to retain connections to California through its enforcement-related

23   activities.

24       Eolas argues that under the new Assignment, it no longer possesses the same obligations

25   that conferred this Court's jurisdiction over it in 2014.  For one, the Assignment grants the

26   Regents a non-exclusive license, while the Exclusive License Agreement gave an exclusive

27   license to Eolas.  Google argues that because the '507 patent at issue here is closely related to the

28   earlier members of the '443 patent previously asserted by Eolas against Google, this Court may

consider "this case's connection to Eolas' patent-related activities in California before relocating to Texas." ECF No. 53-3 at 23 (citations omitted). However, it offers no case law suggesting the Court may expand its jurisdictional scope in this way. In the absence of this, the Court turns to the Assignment, and considers whether it establishes sufficient connections to confer jurisdiction.

### C.      The Assignment

As an initial matter, the 2016 Amendment, which further modified and reduced the obligations held by Eolas in the Assignment, is not relevant to this Court's analysis. That is because the Amendment became effective on February 5, 2016, after Google had commenced this action. ECF No. 37-6 at 2. The U.S. Supreme Court has stated that "the jurisdiction of the court depends upon the state of things at the time of the action brought." Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570-71 (2004) (citation omitted); see also Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987) ("courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction").

For its part, Google argues that several obligations from the Exclusive License Agreement remain in the Assignment: "[o]bligations related to payment of ongoing royalties" as the "purchase price" for the patents assigned; due diligence obligations; the requirement that Eolas provide reports to the Regents on a quarterly basis; obligations related to the defense of patent-related actions; cooperation between Eolas and the Regents with respect to, among others, document discovery–related activities, to be paid for by Eolas; indemnification obligations imposed on Eolas; and the selection of California law as the governing law. ECF No. 53-3 at 19-20.

These obligations, however, do not "relate to the enforcement or defense of the patent." See Radio Sys., 638 F.3d at 788-89. Instead, they relate primarily to the payments that Eolas pays in exchange for acquiring the patents from the Regents. Therefore, these obligations alone cannot support a finding of jurisdiction.

Nevertheless, the Assignment does impose on the Regents enforcement obligations with regard to the patents at issue in this case. Article 4, the "Cooperation; Expenses" article, explicitly requires the Regents to cooperate with Eolas "in connection with [Eolas'] efforts to enforce the

9

1   Patent Rights" and "in any litigation or licensing relating to the Patents."  ECF No. 37-5 at 6-7.

2   To the extent that Article 4 leaves the Regents no discretion, and instead requires the Regents to

3   cooperate with Eolas' enforcement, litigation, and licensing efforts, Article 4 imposes "continuing

4   obligations" upon the Regents, a California resident.  These "continuing obligations" ensure that

5   Eolas' dealings with its non-exclusive licensee the Regents go "beyond royalty or cross-licensing

6   payment."  Avocent, 552 F.3d at 1334.

7        Eolas cites extensively to Xilinx, Inc. v. Papst Licensing GMBH & Co.KG, 113 F. Supp.

8   3d 1027 (N.D. Cal. 2015) as an analogous case suggesting that jurisdiction is lacking here.  Xilinx,

9   however, is distinguishable.  In that case, two companies sued a German patentee in the Northern

10  District of California for a declaratory judgment of non-infringement.  Id. at 1031.  The court

11  analyzed a clause in the defendant's non-exclusive licenses, which provided that "*in the event* that

12  [the defendant] requests Rambus' expertise during interference, priority, infringement, or other

13  court proceedings, and Rambus performs those services, [the defendant] must compensate Rambus

14  for reasonable costs incurred."  Id. at 1042 (emphasis added).  The court found that the clause was

15  an insufficient basis for the court to exercise jurisdiction over the defendant because "the

16  agreement neither establishe[d] 'continuing obligations' between [the defendant] and Rambus nor

17  'impose[d] enforcement obligations with a party residing or regularly doing business in the

18  forum.'"  Id. (citing Avocent, 552 F.3d at 1334).  The court also noted that the clause expressly

19  stated that "nothing set forth in this Agreement shall create an obligation for [Rambus] to provide

20  assistance or otherwise perform services."  Id. at 1043.

21       Here, by contrast, Article 4 of the Assignment explicitly imposes on the Regents an

22  obligation to cooperate with Eolas in Eolas's efforts to enforce the patents in the Agreement,

23  including the '507 patent.  In fact, clause 4.1.4 requires the Regents to cooperate in litigation and

24  licensing of the patents "by causing its employees and, to the extent reasonably feasible, former

25  employees to execute and deliver documents and provide support and testimony relating to the

26  Patents," with representation provided by Eolas.  ECF No. 37-5 at 6-7.  Through these clauses,

27  Eolas has entered into an "agreement or other undertaking which imposes enforcement obligations

28  with a party residing or regularly doing business in the forum."  Avocent, 552 F.3d at 1334.

Eolas also emphasizes that the Regents are a non-exclusive licensee, and contends that this distinction renders case law regarding exclusive licensees, and cited by this Court in its prior order, inapposite.  It is true that exclusive licenses have been held to confer personal jurisdiction upon defendant patentees, see Silent Drive, 326 F.3d at 1202; Avocent, 552 F.3d at 1335, and "[a] number of courts have drawn a distinction between exclusive license agreements and non-exclusive license agreements," Adobe Sys. Inc. v. Tejas Research, LLC., No. C-14-0868 EMC, 2014 WL 4651654, at *6 (N.D. Cal. Sept. 17, 2014) (compiling cases).  However, the Federal Circuit has never held that non-exclusive licenses excuse parties from jurisdiction.  While under certain circumstances an exclusive license may be sufficient to establish jurisdiction, it is by no means necessary.  Rather, the inquiry, as stated before, is whether the non-exclusive license between Eolas and the Regents imposes enforcement obligations on a resident of the relevant forum.  Those enforcement obligations exist here by virtue of the Regents' required cooperation in Eolas's patent enforcement activities.

### D.      Reasonableness and Fairness

The Court further concludes that the exercise of personal jurisdiction over Eolas would be reasonable and fair.  Google points to Eolas' longstanding relationship with and significant obligations to the Regents (a California resident), Eolas' past patent commercialization, licensing, and enforcement efforts in California, its prosecution activities conducted from California, its creation and origin in California, and its continuing relationship with two inventors who are still California residents.  ECF No. 53-3 at 25-26.  As for Eolas's remaining arguments, the Court addresses them in the section below.

## IV.      FIRST TO FILE

Accordingly, the Court concludes that it may exercise personal jurisdiction over Eolas. However, that does not end the inquiry.  Eolas has also argued that the Court should decline to exercise jurisdiction through the first-to-file rule.  As noted, Eolas filed an infringement action on November 24, 2015, the day before this action was filed, in the Eastern District of Texas, claiming that Google has infringed the '507 patent.

The "first-to-file" rule is a 'generally recognized doctrine of federal comity which permits

United States District Court
Northern District of California

11

a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been file[d] in another district.' EMC Corp. v. Bright Response, LLC, No. C-12-2841 EMC, 2012 WL 4097707, at *1 (N.D. Cal. Sept. 17, 2012) (quoting Pacesetter Sys., Inc. v. Medtronic Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). Thus, "[w]hen two actions involving nearly identical parties and closely related patent infringement questions are filed in separate districts, which happens with some frequency in contemporary litigation, the general rule is that the case first filed takes priority, and the subsequently filed suit should be dismissed or transferred or stayed." Id. (quoting 14D Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Juris. § 3823 (3d ed. 2011)). However, the first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982) While it "should not be disregarded lightly," courts should consider "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" in making their determinations. Id. (citations omitted). Ultimately, "[t]he most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." EMC Corp., 2012 WL 4097707 at *2 (citations omitted).

"Three factors should be considered in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." EMC Corp., 2012 WL 4097707, at *1. Here, the second and third factors support application of the first-to-file rule. Both the Texas Action and this action involve the same parties and the same issue – whether or not Google has infringed the '507 patent. Google contends that the first factor is in their favor because the Texas Action was filed just one day before this action, and cites to EMC Corp for the proposition that courts decline "to apply the [first-to-file] rule where the time between the actions is relatively short." ECF No. 53-3 at 27 (quoting EMC Corp., 2012 WL 4097707, at *2 n.1). It further argues that the Court should decline to apply the rule under the forum-shopping exception. ECF No. 53-3 at 28.

The short amount of time between the two cases is indeed a factor that weighs in Google's

1   favor, but this is only one of many equitable concerns to be considered by the Court.  See EMC

2   Corp., 2012 WL 4097707 at *2 n.1 (holding that "the temporal proximity between the two cases

3   may weigh against applying it *if other equitable considerations are present*" (emphasis added)).

4   As for forum shopping, Google argues for this exception primarily by arguing that the factors for

5   measuring the convenience of a change of venue under 28 U.S.C. § 1404(a) support adjudicating

6   the case in this district.

7          Weighing against these considerations are concerns of judicial efficiency and

8   administration.  The doctrine behind the first-to-file rule is "designed to avoid placing an

9   unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting

10  judgments.  Church of Scientology of California v. U.S. Dep't of Army, 611 F.2d 738, 750 (9th

11  Cir. 1979).  Here, for example, there seems to be little point in asking multiple courts to resolve

12  the myriad of issues involving in determining whether Google did or did not infringe on Eolas's

13  patent.  See Pacesetter Sys., Inc., 678 F.2d at 96 ("[P]ermitting multiple litigation of these

14  identical claims could serve no purpose of judicial administration, and the risk of conflicting

15  determinations as to the patents' validity and enforceability was clear.").

16         Indeed, this motion itself is a demonstration of the reason for this doctrine.  Google's

17  argument against application of the first-to-file rule is based primarily on its contention that the

18  convenience factors under § 1404(a) support hearing the case in California.  Yet as both Google

19  and Eolas acknowledge, Google has presented these same arguments to the Eastern District of

20  Texas in a Motion to Transfer the Texas Action to this district.  See ECF No. 53-3 at 28 n.6; ECF

21  No. 57 at 10.  The parties have informed the Court that the motion to transfer was heard by the

22  Texas court on May 12, 2016 and is currently under submission.  Asking two courts to

23  simultaneously conduct the same analysis under § 1404(a) quite obviously creates judicial

24  inefficiency and the risk of conflicting determinations.  Moreover, "normally the forum non

25  conveniens argument should be addressed to the court in the first-filed action."  Pacesetter Sys.,

26  Inc., 678 F.2d at 96.

27         Accordingly, though the Court acknowledges that the Texas Action was filed only one day

28  prior to this action, it concludes that considerations of judicial efficiency support applying the

first-to-file rule.  The close temporal proximity of the two cases does not erase the fact that simultaneous adjudication of this matter by two courts would be inefficient and burdensome.  The Court will therefore stay proceedings in this case until the motion to transfer has been resolved in the Texas Action.[1]

## CONCLUSION

Defendants' motion to dismiss is granted as modified.  All proceedings in this case are hereby stayed until further order of this Court.  The parties shall file a notice with this Court within five days of receiving an order from the Eastern District of Texas in regards to Google's Motion to Transfer in the Texas Action.  A further Case Management Conference is scheduled for Wednesday, September 21, 2016 at 2:00 p.m.  No Case Management Statement need be filed.  Upon receipt of an order in regards to Google's Motion to Transfer, the parties may request to advance or vacate the Case Management Conference.

**IT IS SO ORDERED.**

Dated:  June 16, 2016

JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

---

[1] Though Eolas moved for the Court to dismiss the case rather than stay or transfer it under the first-to-file rule, it does not explain why dismissal is the better option.  The Court concludes that staying the case is the most appropriate remedy under these circumstances.

14